# THE CITY OF CHARLESTON

*v.*

## ISAIAH H. JOHNSTON *et al.*

*Opinion filed December 22, 1897.*

1. STATUTES—*act adopting another statute by reference adopts it as it then existed.*   An act adopting, by reference, the whole or part of another act adopts such act as it then existed, and does not include subsequent additions or modifications of the act so adopted, in the absence of expressed or strongly implied intent.

2. SPECIAL ASSESSMENTS—*act of June 17, 1893, is not an independent act.*   The act on special assessments approved June 17, 1893, (Laws of 1893, p. 78,) is not an independent act, but must be regarded as an amendment of the special assessment acts of 1887 and of 1891, (Laws of 1887, p. 104; Laws of 1891, p. 81,) amending article 9 of the City and Village act.   (Rev. Stat. 1874, p. 232.)

3. DRAINAGE—*adoption of article 9 of City and Village act by Drainage act of 1885 does not include amendments.*   The adoption of the provisions of article 9 of the City and Village act by section 3 of the Drainage act of 1885, (Laws of 1885, p. 60,) includes only such provisions of that article as then existed, and does not include the subsequent amendments of that article by the special assessment acts of 1887, 1891 and 1893.

4. SAME—*assessment for drainage improvement constructed under act of 1885 cannot be divided into installments.*   A special assessment levied to pay for a system of drainage constructed by a city under the

provisions of the Drainage act of 1885 (Laws of 1885, p. 60,) cannot legally be divided into installments nor paid by the issue of bonds.

5. SAME—*amendments of City and Village act do not affect drainage assessments.* The amendments of article 9 of the City and Village act do not affect the manner of levying and collecting drainage assessments for improvements constructed under the Drainage act of 1885, and the same proceedings may be had as were provided for in such article at the time it was adopted by the Drainage act.

6. SAME—*word "drain," used in Drainage act of 1885, authorizes the building of sewers.* The provisions of the Drainage act of 1885, which authorizes the construction of drains, ditches, levees and dykes, are broad enough to include the construction of sewers also.

APPEAL from the County Court of Coles county; the Hon. S. S. ANDERSON, Judge, presiding.

The city council of the city of Charleston having passed an ordinance establishing a drainage district and providing for the construction of a drain therein, as provided in the said ordinance, a petition was filed in the county court of Coles county praying for the assessment of the cost of the improvement, as provided by law, upon the property benefited thereby. Commissioners were appointed and an assessment roll returned to the court, to which numerous objections were filed by property owners. Upon a hearing by the court the objection that the ordinance was invalid because it provided for the division of the assessment into ten installments, and authorized the issue of bonds in anticipation of the payment thereof, was sustained and the petition dismissed. The other objections were overruled. From the order of dismissal the city of Charleston prosecutes this appeal.

Section 1 of the ordinance ordains that certain territory therein described, lying within the corporate limits of the city, shall be improved by a system of drains, as thereinafter provided. Section 13 provides that "the payment of the special assessment for this local improvement shall be divided into ten installments." Section 14 authorizes the corporate authorities to issue bonds in payment of the installments.

W. E. Adams, H. A. Neal, and F. K. Dunn, for appellant.

J. H. Marshall, and J. F. Hughes, for appellees.

Mr. Justice Wilkin delivered the opinion of the court:

The principal question presented for our decision is, had the municipal authorities of the city power to pass these sections 13 and 14 of the ordinance, so dividing the assessment into ten installments and providing for the issuing of bonds to pay the same? The ordinance was passed under the act of the legislature in force July 1, 1885, which authorized the corporate authorities of cities and villages to construct, maintain and keep in repair drains, ditches, levees, dykes and pumping houses, for drainage purposes, by special assessment upon the property benefited thereby. Section 3 of that act is as follows: "All proceedings for the making of the improvement in this act mentioned, and for the maintenance and repair thereof, and for the levy and collection of the special assessments to defray the cost of the same, shall be in accordance with the provisions of article 9 of the general act for the incorporation of cities and villages, approved April 10, 1872."

It is admitted that article 9 of the act mentioned as in force at the passage of the law in 1885 made no provision for or in any manner authorized the division of special assessments into installments or authorized the issue of bonds to pay such assessments. It was not until the amendment to the act of 1872, passed April 29, 1887, that special assessments could be so divided. We held in *Culver* v. *People,* 161 Ill. 89, that by section 3 of the act passed May 2, 1873, authorizing the improvement of parks and boulevards by special assessment, which provided that the proceedings to levy and collect assessments should in all things · conform to the provisions of this same article 9, the language of which is not materially

different from that above quoted of the act of 1895, the legislature intended to adopt only the provisions of said article 9 as it existed in 1873, when the Park and Boulevard act was adopted, and not as it might be thereafter changed, and therefore the corporate authorities of West Chicago had no power, by ordinance passed March 28, 1893, under the act of May 2, 1873, to provide for the collection of an assessment for the improvement of a boulevard, in installments. The decision in that case is based upon the rule that "an act which adopts by reference the whole or a part of another statute, means the law as existing at the time of the adoption, and does not include subsequent additions or modifications of the statute so adopted, unless it does so by expressed or strongly implied intent," as laid down by Endlich on Interpretation of Statutes. (See, also, other authorities cited in that opinion.)

If authority for the passage of sections 13 and 14 of this ordinance depends upon any amendment to article 9 passed since the act of 1885, the *Culver case* is decisive against the validity of those sections. This we do not understand counsel for appellant to gainsay. But they insist that the power exercised in the passage of those sections is expressly given by the act of June 17, 1893, which they say is not an amendment to article 9, "but is an independent act, covering all cases of special assessment authorized by any law of this State." If the act of 1893 had purported, by its title or its language, to be an amendment to the amendments of 1887 and 1891, there could have been no room for this contention. We held, however, in *English* v. *City of Danville*, 150 Ill. 92, that while the act did not on its face profess to amend article 9 or any section thereof, but on its face appears to be an independent act, yet from a consideration of its terms and provisions it should be regarded as an amendment to the act of 1887 as amended by the act of 1891, and we said (p. 95): "It relates to the same subject matter, and, in

effect, changes the sections of the act of 1887 relating to the collection of special assessments in installments, providing for seven installments where the old act only provided for five, and it contains a provision for the issue of bonds to supersede the issue of vouchers provided for under the old act. The mere fact that the act does not, in its title, profess to amend article 9 is unimportant. If the later act made a change in the mode of procedure, the later act may be regarded as an amendment to the other." On the authority of this case it was recently held in *Latham* v. *Village of Wilmette*, 168 Ill. 153, that the act of 1893 was but an amendment to that of 1891, and that the two statutes should be construed together.

But aside from these decisions, if the rule above quoted from Endlich on Interpretation of Statutes be adhered to and applied to this case, it seems clear that the statute of 1893 does so change that of 1872 as to provide an entirely different method of collecting special assessments from that authorized by the old act. Under it assessments could only be collected as a whole, and not in parts, and no bonds could be issued in payment of the assessment, whereas it is now lawful for corporate authorities to divide the assessment into payments or installments to bear interest, and also to issue bonds. It cannot be said that these subsequent additions or modifications of the act as adopted April 10, 1872, were included in the adoption of section 3 of the statute of 1885, under the ruling of the *Culver case.* Article 9, as adopted April 10, 1872, still authorizes the same proceedings for the levy and collection of the special assessment to defray the costs of an improvement under the act of 1885 as might be had under said article 9 as it stood at the time of the adoption of the latter act. The question here is, shall those provisions be followed, or can the municipal authorities elect to adopt the mode authorized by the act of 1893? In other words, does the language of section 3 of the act of 1885 adopt these subsequent additional meth-

ods, so as to give the municipal authorities the discretion of adopting one or the other of the methods? *Culver* v. *People, supra,* is conclusive that it does not.

It is also contended by appellees, that even if the assessment could be lawfully divided into installments, not more than seven could be legally made. The act of 1893 authorizes the division of an assessment for building sewers into not to exceed ten installments. But it is contended this ordinance does not provide for building a sewer; also that the act of 1895 does not authorize the construction of sewers. It is true that sewers are not expressly mentioned, either in the title or body of that act; but the meaning of the word "drain" is broad enough to include sewers, and, in numerous proceedings under that statute, some of which have come before us for review, has been so construed and acted upon. (*Village of Hyde Park* v. *Spencer,* 118 Ill. 446; *Pearce* v. *Village of Hyde Park,* 126 id. 287; *Rich* v. *City of Chicago,* 152 id. 18.) We entertain no doubt that the statute authorizes the construction of drains, to be used as sewers, by a proper ordinance, and we are inclined to the opinion that the ordinance in question may properly be construed as one providing for the construction of sewers, although it is not altogether clear in that regard.

The discussion of objections filed to the confirmation of the assessment, other than those considered, is aside from the record. As above stated, they were each overruled by the county court. No exception was taken to that ruling, neither are cross-errors here assigned. The court's decision upon these objections is not, therefore, before us for review, for the reason above stated.

The principal objection was properly sustained, and the judgment of the county court will accordingly be affirmed.

*Judgment affirmed.*